RODRÍGUEZ, PLAINTIFF AND APPELLANT, *v.* MOLERO, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Arecibo in an Action for Performance of Contract.

No. 2467.—Decided March 16, 1922.

CONTRACT — PURCHASE AND SALE — DEFECTS IN VENDOR'S TITLE — SPECIFIC PERFORMANCE.—Where the evidence shows that the contract of purchase and sale was entered into, the fact that the grantor's title contained defects of which the grantee had knowledge when the contract was made will not affect the former's right to demand specific performance.

ID.—ID.—DEFERRED PAYMENT—MORTGAGE—CONSENT OF WIFE.—It being proved that with the consent of his wife the grantee bound himself to give a mortgage on the property purchased to secure the deferred part of the purchase price, if he can not create the mortgage on account of his wife's refusal to join in it the grantor is entitled to recover the whole purchase price.

ID.—ID.—INTEREST—PRODUCTS.—It is presumed that the products of a property which the grantor was compelled to take charge of because of its abandonment by the grantee before paying the purchase price, are sufficient to compensate the grantor for any loss of interest which he may have suffered.

The facts are stated in the opinion.
*Messrs. L. Mercader* and *E. Marín* for the appellant.
*Mr. F. R. Flores* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

As a good deal of the facts appear in the pleadings, we transcribe them:

"COMPLAINT.—To the Hon. Court.—Comes now the plaintiff and by his undersigned attorney respectfully shows the court:

"First: That the plaintiff and defendant are of age and residents of Utuado.

"Second: That the plaintiff, personally and as the agent of his wife Ana Rosa Vargas, made a contract of bargain and sale of a rural property with the defendant, Luis Molero Alvarez, the covenants of which were set forth by agreement of the contracting parties in the following document which, copied literally, reads thus:

" 'Private deed of bargain and sale. Manuel Rodríguez y Rodríguez, husband of Ana Rosa Vargas Rodríguez, merchant and land owner, and Luis Molero Alvarez, husband of Francisca Pérez Villafañe, landowner, both of age and residents of Utuado, set forth as antecedents to a contract of bargain and sale agreed upon by them, the following: First: The said Manuel Rodríguez states that he and his wife are the owners of the following property: Rural.—Name unknown, situate in the ward of Vivi-Abajo, at a place called Los Fondos, municipal district of Utuado, consisting of 64½ *cuerdas,* the equivalent of 25 hectares, fifteen ares, 46 centares, of broken land, meadows and plantations of coffee, plantain and minor products together with a dwelling house. (Property Described.) Second: That the same was acquired by deed executed before Notary Francisco Soto Gras of San Juan on June 6, 1917, and by purchase from Marcelina, María del Carmen, María de la Encarnación, Ramona, Angela López Villamil and Adolfo Alvarez Fernández, represented by Rafael Fabián y Fabián, and recorded as to certain part ownerships in his name as shown by records 6 and 7, pages 41 and 42, property No. 3064 of the Registry of Property of the District.—Encumbrances: According to the deed before me, this property is free of encumbrance. Third: That this deed of purchase and sale is executed subject to the following conditions.—Manuel Rodríguez y Rodríguez, personally and as the agent of his aforesaid wife, which agency he will prove by power of attorney whenever necessary, sells to Luis Molero Alvarez the property segregated for the sum of ten thousand dollars ($10,000), the receipt of one-half of which he acknowledges, the remaining five thousand dollars ($5,000) payable within the two years with option to defer payment for another two years as and from this date, which sum shall bear interest at the rate of eight per cent (8%) per annum payable at the end of each month, the debtor enjoying the right to pay part or the whole of the sum due before the expiration of the time allowed, such partial payments, however, not to be less than one thousand dollars ($1,000).

Second: It is shown that as to certain undetermined joint interests this property is recorded in the name of the vendor and that in order to record title covering all the rights granted to Rodríguez a proper judicial proceeding must be had, wherefore Molero will not receive a public deed until Rodríguez shall obtain a title valid for purposes of record, it being understood that no defect in the title that may be passed by the vendor shall be a ground for withholding by the vendee of the deferred payment or a part thereof, Rodríguez being liable only for warranty in case of eviction in the manner determined by the Civil Code. Third: It is further stated that Carlos Cabrera Paz, whose property adjoins this estate, has brought an action in the District Court of Arecibo for a judicial survey and if as a result thereof the property sold should be found to contain more or less than stipulated, the contracting parties shall not be allowed to claim any excess or shortage. Fourth: It is also agreed that in executing the deed of bargain and sale Molero shall create a voluntary mortgage for the sum he still owes, together with an additional amount of two hundred and fifty dollars ($250) to secure the costs, expenses, disbursements and attorney fees in case of legal proceedings.—Utuado, September 1st, 1920. (There are two lines for signatures and underneath the word "Contractors.")—Affidavit No.——. —Subscribed before me by Luis Molero Alvarez and Manuel Rodríguez y Rodríguez, married, landowners, of age and residents of Utuado, whom I certify that I know personally.—Utuado, September 1920.' (There is a line for the Notary's signature.)

"Third: That the defendant alleging untenable reasons which were disposed of at the time the contract was agreed upon, refuses to execute the same.

"Fourth: That the plaintiff has complied with and is ready to fulfill all the covenants set out in the deed of bargain and sale heretofore mentioned.

"For the foregoing reasons we pray the court, after the proper legal proceedings have been had, to render judgment directing the defendant to comply with the conditions set out in the deed of bargain and sale and to pay the costs, expenses, disbursements and plaintiff's attorney fees."

"ANSWER TO THE COMPLAINT.—Comes now the defendant, Luis Molero Alvarez, by his attorney, Francisco R. Flores, and in answer to the complaint herein respectfully alleges:

"First: That he admits the first count of the complaint.

"Second: That he denies as absolutely untrue the allegation of the existence of the document cited in the second clause of the complaint or that the defendant in any manner or at any time acquiesced in or authorized any person to acquiesce in the preparation of the document copied in the second clause of the complaint.

"Third: That he denies the third clause of the complaint for the reason that the defendant in no manner and under no pretext has alleged untenable reasons for not consenting or agreeing to or accepting the offer of sale that the plaintiff made him in connection with the property forming the subject-matter of this action.

"Fourth: We do not deny, but neither do we admit, the fourth count of the complaint, since the contract to which the complaint refers does not exist.

"And as new matter in opposition to the complaint, the defendant alleges:

"First: That about the end of August the plaintiff offered to sell the defendant the property which forms the subject-matter of this action and as a consequence the defendant visited the property to examine the same. Subsequently the defendant asked to see the title deeds to the property and found that the plaintiff did not have a valid title for the purposes of record in the registry of property and was unable to execute a public instrument in favor of the defendant securing to him the property that he desired to acquire and defendant thereupon so notified the plaintiff and no agreement was reached for the perfecting of any contract.

"Wherefore defendant prays that this honorable court render judgment dismissing the complaint and mulcting the plaintiff in costs, expenses and attorney fees."

The District Court of Arecibo after a trial said the following:

"From an examination of the witnesses and the documentary evidence produced by the plaintiff I am of the opinion that the contract sought to be enforced never attained legal existence, since the confusing mass of the evidence shows only some oral propositions on the part of one and the other regarding the sale and acquisition of a property, there being no *aggregatio mentium* on their part as to the consideration and the subject-matter, indispensable elements that must be shown in a clear and conclusive manner before the contract can be held to exist. Sections 1221 and 1228 of the Civil Code.

"In my opinion, and judging from the documentary and oral evidence, the only thing that can be held to exist in this case is pollicitation or imperfect promise, but not a contract which, according to the sections referred to, rests upon the basis of consent."

From the rest of the opinion it appears that the court's doubt as to the perfection of the contract depended not so much on the fact that there was no meeting of minds of the parties, but on other things, namely, that the part of the property to be conveyed was not recorded in the registry of property; that with regard to some of the hereditary shares which the complainant had bought there existed a suit or suits in order to obtain a recordable title; that there was a suit pending with a neighbor over the proposed boundaries of one of the shares, and also apparently, although not insisted upon every strongly, that the wife of the purchaser had not agreed to execute a mortgage on the property proposed to be conveyed as outlined in the complaint and which objection to the contract or a sort of an objection was made by the defendant in letters written to the complainant.

To go to the root of the matter, we may say at once that the proof convinces us that the parties to this suit had reached a perfect agreement as to the sale of the property and that the wife of the purchaser agreed to make a mortgage. In no part of its opinion does the court express any doubt as to the veracity of the witnesses, and indeed we think the record discloses that none arose. The complainant took the stand and gave a detailed narrative of the agreement made by him with the defendant, supporting all the averments of the complaint, and substantially everything to which he testified is corroborated by the notary in the case who also took the stand. This notary was chosen, not by the vendor, but by the purchaser. The complainant is also corroborated by another witness, by the the silence of both the

purchaser and his wife who were available as witnesses, as well as by the pleadings.

It is an undisputed fact, accepted by the court below, that the defendant was placed in possession of the land, held it for fourteen or fifteen days and then turned it over to the complainant who accepted it to avoid greater harm to himself. The evidence tends to show also that after turning possession over to defendant the complainant removed his cattle from the property and that the defendant used and employed the farm hands who were on the land whom the complainant paid when the defendant refused to remain in physical possession.

If it had been a fact that there had been no meeting of minds; if it had been a fact that Mrs. Molero refused to give her consent to the execution of the mortgage, or if it had been a fact that any of the recited obstacles to the perfection of a record title stood in the way of the completion of the contract, it would have been easy for either the defendant or his wife to have taken the stand and denied the statements of the complainant and the notary. These two witnesses were subjected to the sharpest kind of cross-examination by the judge, who in his examination also apparently shows that he had some idea that the failure to record the title or the pendency of the suits interfered with the existence of the contract. The proper way for the appellee to have controverted the statements of the complainant and his witnesses would have been to take the stand himself and perhaps have his wife do so. The fact of evidence wilfully suppressed creates a strong presumption against the person suppressing it, or what is equivalent, failing to testify. Section 102, par. 5, Law of Evidence; *Fajardo et al.* v. *Tió*, 17 P. R. R. 230.

As we have said, the evidence of the complainant tends to support all the averments of the complaint. The parties had agreed to everything, even down to the amount of the

interest on the deferred payments. It is true that one of the letters from the defendant to the complainant showed an objection to the amount of interest that the defendant desired to be six per cent and that the complainant as he testified wanted to be nine per cent.

But this evidence tends to show that the defendant yielded the point of the amount of the interest, and the fact is clearly established that he took possession of the land in pursuance of his alleged contract and complainant removed his cattle after defendant had written the said three letters.

The answer of the defendant under the rules of code pleadings admits the facts of the complaint. The second paragraph does not deny the existence of the contract, but denies that the defendant made the document set up in the complaint, or that he authorized anybody to make it for him. The third paragraph of the answer denies that the defendant had unjustified reasons for not accepting the contract; it does not deny that he made the contract. The fourth paragraph states a mere conclusion of law, inasmuch as it says that there was no valid contract existing. Given the other paragraphs of the answer, *non constat* that the defendant may have thought the contract to be non-existent because he had not actually signed a paper to that effect. And the new matter puts the ground of the refusal on a lack of a recorded title, or a title ready to be recorded. But the purchaser did not deny that the parties came to an agreement.

We shall not at this time insist too strongly on the failure of an answer to deny all the facts of the complaint, but we are of the opinion that this answer is thoroughly evasive and not the frank statement of a person who wishes to deny the existence of an agreement. We think it is an ingenious attempt to make a defense for the defendant.

The appellant says that the court apparently relied on some of the statements in the answer as if it were evidence. Indeed the court does mention the facts of the answer, but

we must doubt whether the court could really have considered this answer as evidence, especially as none of the pleadings were sworn to.

The notary, under examination by the court as to why he did not let the parties sign when they came to his office on a certain day, said that the understanding was that certain hereditary shares should be recorded before the deed should be drawn up and that before the parties signed the said deed he wished that these hereditary shares should be recorded. These shares were actually recorded within a few days after the parties had gotten together in the notary's office. They were perfectly recordable titles as the evidence showed. So that the only matters that were a trifle uncertain were the suits pending to obtain deeds for other shares of property and also on the question of the boundary with Carlos Cabrera. The complainant testified that it was a suit initiated to clear the boundary by the said Carlos Cabrera on an understanding with the adverse party. Likewise it was also shown that the complainant was in possession of all the shares of property for which he wanted deeds for the purpose of record. There can be no doubt from the record that the defendant knew of all these defects and agreed to take the property despite them and actually entered into the possession of the land. Under these circumstances we see no reason why a specific performance should not be decreed.

If a purchaser can get the substantial inducement to the purchase he may be compelled to accept. Sections 1354, 1353 and 1091 of the Civil Code; 10 Manresa 70, 71; 23 Scaevola, 111. It is clear from the foregoing authorities that small defects of title or small failures of description will not affect a vendor's right to insist upon a specific performance and that, if necessary, compensation may be ordered to the defendant. No compensation is necessary in this case, because the parties were perfectly agreed as to the thing conveyed

and the defendant was actually put in possession of the same. The courts of the United States go farther and say that where the giving of a good title depends upon the will of another, that fact makes no difference if that third person's consent may be obtained. *Jacobson* v. *Rechnitz*, 46 N. Y. Misc. 135; *Lyman* v. *Gedney*, 29 N. E. 282, 288; *Rice* v. *Theimer et al.*, 146 Pac. 702; *Bosch Magneto Co.* v. *Rushmore*, 95 Atl. Rep. 614, where it was also said that hardships fairly and voluntarily assumed as a part of the contract sought to be enforced cannot prevail to stay specific performance thereof. *Citronelle Turpentine Co.* v. *Buhlig*, 63 So. 952.

From the examination of these authorities and others it appears that specific performance will always be decreed by practically any court in any land where it is equitable and just to do so, beginning with Justinian Inst., Lib. 3, Tit. 23, Par. 1. And a much cited case in this regard is *Hepburn* v. *Auld*, 5 Cranch, 262, opinion of Chief Justice Marshall.

The evidence tends to show that Mrs. Molero did agree to the contract and also that Molero had a power of attorney from her. None of these facts were denied. Mrs. Molero, however, is not a party to the suit. Perhaps the court has power under section 36 of the Code of Civil Procedure to have her show cause why she should not comply with the agreement, but such a proceeding is unnecessary in this case. The defendant agreed to pay $10,000 and to give a mortgage of $5,000 for the deferred purchase money. If the defendant is unable to give a complete mortgage because of the present refusal of his wife, then under the circumstances he should still be required to purchase the property, as we have no doubt that Mrs. Molero did consent to make the mortgage. The failure was on the part of the defendant and if a mortgage is not given the complainant has a right to recover the whole purchase price.

The proof tends to show that the complainant is actually

in possession of the land, the defendant refusing to remain in possession of the same, and it will be presumed that the fruits and profits of the same were sufficient to cover any loss of interest that the complainant may have suffered.

*Reversed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.